**CT Corporation**

**Service of Process Transmittal**
01/17/2020
CT Log Number 537002745

TO: Laurie Penna, Casualty Claims Supervisor, AVP
Chubb & Son, Inc.
555 Long Wharf Dr Ste 10
New Haven, CT 06511-6104

RE: **Process Served in Massachusetts**

FOR: Federal Insurance Company  (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | NEW ENGLAND LEAD BURNING COMPANY, INC., ETC., PLTF. vs. FEDERAL INSURANCE COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | LETTER, SUMMONS, INTRODUCTION, MOTION, NOTICE |
| **COURT/AGENCY:** | Commonwealth of Massachusetts - Trial Court, MA<br>Case # 2020CV00037BLS2 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 01/17/2020 postmarked on 01/16/2020 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Thomas J. Conte<br>Mirick, O'Connell, DeMallie & Lougee, LLP<br>100 Front Street<br>Worcester, MA 01608<br>(508) 791-8500 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/17/2020, Expected Purge Date: 01/27/2020<br><br>Image SOP<br><br>Email Notification, CT Corp  ct_corp@chubb.com<br><br>Email Notification, Laurie Penna  lpenna@chubb.com<br><br>Email Notification, John Sussingham  jsussingham@chubb.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

Page 1 of  1 / RK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



US POSTAGE >> PITNEY BOWES
ZIP 02118 $ 001.75⁰
02 4W
0000367743 JAN 16 2020



COMMONWEALTH OF MASSACHUSETTS
DIVISION OF INSURANCE
1000 WASHINGTON STREET, SUITE 810
BOSTON, MA 02118-6200



FEDERAL INSURANCE COMPANY
c/o CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110



DIVISION OF INSURANCE
1000 WASHINGTON STREET, SUITE 810
BOSTON, MA 02118-6200



# COMMONWEALTH OF MASSACHUSETTS
## Office of Consumer Affairs and Business Regulation
### DIVISION OF INSURANCE
1000 Washington Street • Suite 810 • Boston, MA  02118-6200
(617) 521-7794 • FAX (617) 521-7475
http://www.mass.gov/doi

**CHARLES D. BAKER**
GOVERNOR

**KARYN E. POLITO**
LIEUTENANT GOVERNOR

**MIKE KENNEALY**
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

**EDWARD A. PALLESCHI**
UNDERSECRETARY

**GARY D. ANDERSON**
COMMISSIONER OF INSURANCE

January 16, 2020

FEDERAL INSURANCE COMPANY
c/o CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

Re: Service of Process

Dear Sir or Madam:

Enclosed you will find legal process which was served upon the Commissioner of Insurance, in his capacity as attorney and registered agent for, Service of Process* for a foreign insurance company, as provided for in Massachusetts General Laws, Chapter 175, §151(3) and §154.

*  **Please note**: All future inquiry or correspondence should be directed to the attention of the attorney of record of the enclosed documents.

Sincerely,

Steven Zavackis
Legal Division
(617) 521-7432

Enclosure(s)

## Commonwealth of Massachusetts

SUFFOLK, SS.                                    TRIAL COURT OF THE COMMONWEALTH
                                               SUPERIOR COURT DEPARTMENT
                                               CIVIL DOCKET NO.  2020-CV-00037-BLS2

New England Lead Burning Company, Inc.
d/b/a NELCO Worldwide
_____, PLAINTIFF(S),

v.

Federal Insurance Company ___, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO ___Federal Insurance Company___ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the __Suffolk Superior__ Court. YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.

1.    **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2.    How to Respond.  To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by: ·   Superior
      a.  Filing your signed original response with the Clerk's Office for Civil Business, __Suffolk / __ Court, 3 ·Pemberton Sq., Boston, MA 02108 _ (address), by mail or in person, AND

      b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: Thomas J. Conte, Esq., Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front St., Worcester, MA 01608

3.    What to include in your response.  An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

A True Copy Attest

1/16/20

Constable, Boston, MA    Date

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on __January 15__, 20 _20_.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___        Signature: _____

N.B.   **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

1/16/20

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                         SUPERIOR COURT DEPARTMENT
                                    OF THE TRIAL COURT
                                    CIVIL ACTION NO.

                                    CIVIL ACTION NO.

NEW ENGLAND LEAD BURNING
COMPANY, INC. d/b/a NELCO
WORLDWIDE,
        Plaintiff

v.                                  COMPLAINT AND JURY DEMAND

FEDERAL INSURANCE COMPANY,
        Defendant

RECEIVED JAN - 6 2020 SUPERIOR COURT-CIVIL MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE

## INTRODUCTION

1.      This action is brought by New England Lead Burning Company, Inc. d/b/a

NELCO Worldwide ("NELCO Worldwide") against Federal Insurance Company ("Federal") for

breach of contract, declaratory relief, and violations of Massachusetts General Laws Chapters

93A and 176D, arising out of Federal's unjustified refusal to provide coverage under an

insurance policy it sold to NELCO Worldwide.

2.      NELCO Worldwide is the named insured under Federal Forefront Portfolio 3.0

Policy Number 8225-5904 (the "Policy"), which specifically provides coverage for losses

resulting from "Computer Fraud," "Funds Transfer Fraud," and "Forgery."

3.      NELCO Worldwide was the victim of two (2) separate international wire transfer

frauds on or about September 12, 2018 and September 27, 2018, respectively, in which a project

administrator in the Company's finance department, Marilyn Graham ("Graham"), was deceived

by emails from perpetrators of the fraud forged to appear as if they were coming from NELCO

Worldwide's National Diagnostic Sales Manager & Strategic International Account Manager,

Joey Harrell ("Harrell"), and a supplier resulting in the transfer of a total of $933,916.55 to two (2) overseas accounts.

4.    The forged emails, which appeared on the surface nearly identical to emails sent from Harrell's real email account and the supplier's account, led to two (2) fraudulent wire transfers.

5.    To effectuate this scheme, the perpetrators obtained Graham's login credentials and, thereafter, entered the NELCO Worldwide computer system to monitor NELCO Worldwide's email and financial transactions.  In this regard, the perpetrators added two (2) new mail rules, one to direct a blind copy of all emails to and from Graham to an address outside NELCO Worldwide and the other to cover their electronic tracks by deleting all such emails from Graham's sent items, so that neither she nor an administrator would notice the unauthorized entry and/or the forwarding of all emails sent and received by Graham.  This allowed the attackers to covertly monitor all communications and facilitated their ability to fraudulently communicate with NELCO Worldwide's personnel.

6.    NELCO Worldwide purchased the Policy, and the Policy is designed, to protect NELCO Worldwide against precisely the type of loss it has now incurred as a result of the two (2) fraudulent wire transfers.  Yet despite the fact that NELCO Worldwide paid its premiums, gave prompt notice of the fraud to Federal, and cooperated fully and completely with Federal's inquiry into the fraud, Federal has failed and refused to pay NELCO Worldwide's claims for coverage under the Policy (the "Claims"), except belatedly for Social Engineering coverage in the amount of $100,000.  This refusal to pay constitutes a breach of Federal's contractual obligations.

7.     NELCO Worldwide seeks a declaration that there is coverage for the Claims under the Policy, particularly, under the Computer Fraud Coverage provision, the Funds Transfer Fraud Coverage provision, and Forgery Coverage provision and other clauses, and damages for breach of contract due to Federal's unreasonable failure to honor its obligation under the Policy to cover the Claims.

8.     NELCO Worldwide also seeks damages from Federal under G.L. c. 93A and G.L. c. 176D, for, inter alia, intentionally and wrongfully delaying the payment of amounts which were indisputably due as early as October or November 2018 under one coverage (Social Engineering) while purportedly "investigating" coverage under the other provisions for approximately an additional seven (7) months, without any justification or excuse for that delay, and the misstating and disregarding of material facts in an effort to justify its wrongful denial of coverage.  As a result, NELCO Worldwide seeks an award of multiple damages, as well as its attorneys' fees and costs.

## PARTIES

9.     Plaintiff NELCO Worldwide is a Massachusetts corporation with a principal place of business located at 2 Burlington Woods Drive, Suite 300, Burlington, MA 01803.

10.     Defendant Federal is an insurance company organized under the laws of the State of Indiana with its principal place of business located at 202B Hall's Mill Road, Whitehouse Station, New Jersey.  Federal is authorized to sell or write insurance in Massachusetts and, at all material times, has conducted and continues to conduct substantial insurance business in the Commonwealth of Massachusetts, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in Massachusetts.

## GENERAL ALLEGATIONS

### I.   The Federal Policy

11.   In consideration of significant premiums paid to cover exactly the type of loss at issue here, Federal sold the Policy to NELCO Worldwide for the policy period of December 31, 2017 to December 31, 2018.

12.   The Policy provides coverage for a wide variety of criminal and fraudulent activity, including "Computer Fraud," "Funds Transfer Fraud," and "Forgery."

13.   The Policy provides "Limits of Liability" for each incident of Computer Fraud, Funds Transfer Fraud, and Forgery of $750,000.00, subject to a $25,000.00 retention, and the Policy has a $1,000,000.00 Limit of Liability in the aggregate for all claims and liability coverage parts.

14.   The Policy also provides a Social Engineering Endorsement with Limits of Liability of $100,000.00, subject to a $25,000.00 retention.

15.   The Policy provides "Computer Fraud Coverage" for "direct loss of **Money, Securities** or **Property** sustained by an **Insured** resulting from **Computer Fraud** committed by a **Third Party**."[1]

16.   The Crime Coverage Part of the Policy defines "money" as follows:  "**Money** means currency, coin, bank notes and bullion."

17.   The General Terms and Conditions of the Policy define "organization" as follows: "**Organization** means the **Parent Organization** and any **Subsidiary**." Item 1 of the Declarations for the General Terms and Conditions lists "New England Lead Burning Co Inc." as the **Parent Organization**.

---

[1] All emphasized terms appear in boldface in the Policy.

18.    The Crime Coverage Part of the Policy defines "third party" as follows:  "**Third Party** means a natural person other than:

(A)    an **Employee**; or

(B)    a natural person acting in collusion with an **Employee**."

19.    The Crime Coverage Part of the Policy defines "computer fraud" as follows: "**Computer Fraud** means the unlawful taking of **Money, Securities or Property** resulting from a **Computer Violation**."

20.    The Crime Coverage Part of the Policy defines "computer violation" as follows: "**Computer Violation** means an unauthorized:

(A)    entry into or deletion of **Data** from a **Computer System**;

(B)    change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(C)    introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed solely against an **Organization**."

21.    The Crime Coverage Part of the Policy defines "data" as follows:  "**Data** means information contained in records, manuscripts, accounts, microfilms, tapes or other records, which are processed and stored in a **Computer System**."

22.    The Crime Coverage Part of the Policy defines "computer system" as follows: "**Computer System** means a computer or network of computers, including its input, output, processing, storage and communication facilities, and shall include off-line media libraries."

23.    The Crime Coverage Part of the Policy also provides "Funds Transfer Fraud Coverage" for "direct loss of **Money or Securities** sustained by an **Insured** resulting from **Funds Transfer Fraud** committed by a **Third Party**."

24.   **Funds Transfer Fraud** means "fraudulent written, electronic ... instructions ... purportedly issued by an **Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent."

25.   The Policy also provides "Forgery Coverage" for "direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**."

26.   The Crime Coverage Part of the Policy defines "forgery" as follows: "**Forgery** means the signing of another natural person's name with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as handwritten signatures."

27.   The Crime Coverage Part of the Policy defines "financial instruments" as follows: "**Financial Instrument** means checks, drafts or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon an **Organization** or by anyone acting as an **Organization's** agent, or that are purported to have been so made or drawn."

## II.   NELCO Worldwide is the Victim of a Fraud

28.   NELCO Worldwide has been in business for over 85 years and, among other things, designs and constructs radiation therapy rooms for hospitals and doctors' groups.

29.   In or around September, 2018, NELCO Worldwide experienced an electronic attack.

30.    In or around September, 2018, Graham's login credentials for the NELCO Worldwide computer system were compromised, allowing the attackers undetected access to Graham's electronic mailbox.

31.    The perpetrator(s) entered NELCO Worldwide's computer system and added two (2) new mail rules in Graham's mailbox.

32.    One of the new mail rules directed that a blind copy of all emails to and from Graham be sent to an address, wlewis.rwlinvestments1@gmail.com, outside of NELCO Worldwide.

33.    The second new mail rule directed that all references to the blind copies of the emails be deleted from Graham's sent items so she or an administrator would not detect the unauthorized entry and activity.

34.    On or about September 18, 2018, Graham received an email from a person purporting to be Harrell, another employee of NELCO Worldwide (the "Fake Harrell").

35.    In that email, the attacker, the Fake Harrell, leveraged data acquired from the unauthorized access to Graham's electronic mailbox and the Fake Harrell requested a transfer of funds to pay an invoice of a long-time supplier located in Hong Kong, Hip Shing Decoration Co. ("Hip Shing").

36.    The Fake Harrell appeared to be forwarding an email he had received from Hip Shing which directed NELCO Worldwide to make payment via wire to a purported Hip Shing account at the China Construction Bank.

37.    In accordance with those instructions, a payment was made by NELCO Worldwide by wire transfer initiated from United Bank in the amount of $842,131.00 (the "Hip Shing Transfer").

38.     Additionally, the email from the Fake Harrell also included Harrell's NELCO Worldwide signature block and contact information, further making it appear as if it had actually been sent by Harrell.

39.     Graham forwarded the Fake Harrell's request for payment to NELCO Worldwide's Chief Financial Officer ("CFO") who, in accordance with standard procedure, initiated payment by wire.

40.     In or around September, 2018, Hip Shing again requested payment of the invoice. When NELCO Worldwide informed Hip Shing that it had made a wire transfer as directed, Hip Shing informed NELCO Worldwide that it did not make such a request and that the account designated at China Construction Bank was not Hip Shing's.

41.     Also in or around September, 2018, Graham received an email from a person purporting to be a long-standing supplier of NELCO Worldwide, Patrick Grannell of Grannell Steel ("Fake Grannell"). In the email, the Fake Grannell requested a transfer of funds to pay an invoice for Grannell Steel, located in the United Kingdom.

42.     The Fake Grannell appeared to be forwarding legitimate wire information for Grannell Steel's bank account to effectuate payment.

43.     In accordance with the instructions and wiring information, a payment was made by NELCO Worldwide by wire transfer initiated from United Bank to a bank in the United Kingdom in the amount of $91,785.55 (the "Grannell Steel Transfer").

44.     The email from the Fake Grannell was altered so that the "From" line of the email showed an actual email address for Patrick Grannell, making it appear as though it had actually been sent by Patrick Grannell.

45.    Graham forwarded the Fake Grannell's request for payment to NELCO Worldwide's CFO who, in accordance with standard procedure, initiated payment by wire.

46.    NELCO Worldwide contacted Grannell Steel and was informed that it had never received the monies that had been wired.

47.    NELCO Worldwide reported the fraudulent transfers to the authorities, but the Fake Harrell and Fake Grannell were never discovered and the transferred funds were not recovered.

### III.    Federal's Denial of Coverage

48.    NELCO Worldwide promptly notified Federal of the fraudulent wire transfers and made the Claims for coverage under the Policy in or about early October, 2018.

49.    Federal acknowledged receipt of the Claims and held a telephone conference with NELCO Worldwide to discuss the facts of the fraud.  NELCO Worldwide and Federal discussed coverage under the Computer Fraud Coverage provision, the Funds Transfer Fraud Coverage provision, and the Forgery Coverage provision.

50.    NELCO Worldwide also provided additional substantive documentation to Federal in or about November, 2018, from which Federal could have made a coverage determination.

51.    Coverage exists for the Hip Shing Transfer under the Computer Fraud Coverage provision because by, for example, altering the "From" line of the emails sent to the NELCO Worldwide employee, particularly the emails from the Fake Harrell, to make them appear as if they came from a NELCO Worldwide sales manager, the Fake Harrell misrepresented the information as to who sent those emails.  Because Data is defined in the Policy as any "information contained in records [or] accounts...," which are processed or stored in a Computer

System, the act of changing the email address in the "From" line, as just one example, was an unauthorized entry into or deletion of Data from a Computer System, a change to Data elements or program logic of a Computer System, and/or an introduction of instructions, programmatic or otherwise, directed against NELCO Worldwide. Thus, there was a Computer Violation, and because that Computer Violation resulted in a fraudulently induced transfer of Money, there was Computer Fraud.

52.     Computer Fraud Coverage also exists for the Hip Shing Transfer because by obtaining Graham's login credentials and entering two (2) new mail rules into the computer system, the perpetrators of the two (2) frauds entered into or deleted Data from a Computer System, and/or changed Data elements or program logic, and/or introduced instructions, programmatic or otherwise, directed against NELCO Worldwide. These actions constitute a Computer Violation and Computer Fraud under the Policy.

53.     For the same reasons and based on the foregoing facts, there should also be coverage for the Grannell Steel Transfer under the Computer Fraud provision of the Policy.

54.     Coverage also exists under the Funds Transfer Fraud Coverage because once Graham believed that the emails from the Fake Harrell were really from a NELCO Worldwide manager based on the various alterations, she and the CFO became unwitting participants in the fraud and transmitted the instructions of the perpetrators of the fraud. Fraudulent electronic instructions were sent to a financial institution, NELCO Worldwide's bank, when Graham requested payment and the CFO and another employee approved it. Because NELCO Worldwide's sales manager did not request or approve the transfers, the funds were not wired with NELCO Worldwide's knowledge or consent. Thus, there was a Funds Transfer Fraud, as defined by the Policy.

55.     There is also coverage under the Forgery Coverage provision because the Fake Harrell wrote several emails pretending to be a NELCO Worldwide sales manager, with the intent to deceive a NELCO Worldwide employee into a fraudulent transfer of funds, and electronically signed those emails with the actual name of the NELCO Worldwide sales manager. This satisfies the Policy definition of Forgery.

56.     For the same reasons and based on the foregoing facts, there should also be coverage for the Grannell Steel Transfer under the Funds Transfer and Forgery provisions of the Policy.

57.     On or about June 21, 2019, Federal denied coverage for the Claims, stating that coverage was not available under the Computer Fraud Coverage provision, the Funds Transfer Fraud Coverage provision, or the Forgery Coverage provision. Despite being provided with ample information concerning both fraudulent transactions, in its denial, Federal did not even mention the Fake Harrell's email and appears to have intentionally disregarded the facts relating to it.

58.     On that same date, approximately eight (8) months after being notified of the two (2) fraudulent transactions, Federal indicated that there was coverage under the Social Engineering Clause which provided for $100,000.00 in coverage only, and tendered payment to NELCO Worldwide in that amount.

59.     By denying coverage when the Claims were covered under the Policy and all prerequisites to coverage were met, Federal breached its contractual obligation to NELCO Worldwide.

## COUNT I
### (Breach of Contract)

60.    NELCO Worldwide repeats and incorporates by reference paragraphs 1 through 59 as if expressly set forth herein.

61.    The Policy constitutes a valid and enforceable contract between Federal and NELCO Worldwide because NELCO Worldwide was the named insured under the Policy.

62.    NELCO Worldwide has paid all premiums, provided prompt notice of the Claims, and otherwise performed all obligations required of it under the Policy.

63.    Under the terms of the Policy, Federal must pay up to $1,000,000 for a direct loss of Money that comes within the Policy definitions of Computer Fraud, Funds Transfer Fraud, or Forgery.

64.    As detailed above, the facts of the Claims come within all three of those Policy provisions.

65.    Federal has not paid any amounts to NELCO Worldwide in connection with the Claims, except for $100,000 for Social Engineering Coverage.  By failing to provide coverage for the Claims, Federal has breached the terms of the Policy.

66.    As a direct and proximate result of Federal's breach of the Policy, NELCO Worldwide has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## COUNT II
### (Declaratory Relief)

67.    NELCO Worldwide repeats and incorporates by reference paragraphs 1 through 66 as if expressly set forth herein.

68.    Pursuant to the terms of the Policy, Federal is obligated to pay, up to the

$1,000,000 limit of liability, for a direct loss of Money that comes within the Policy definitions

of Computer Fraud, Funds Transfer Fraud, or Forgery.

69.    As detailed above, the facts of the Claims come within all three of those Policy

provisions.

70.    Federal disputes its legal obligation to pay the Claims.

71.    NELCO Worldwide is entitled to a declaration by this Court of Federal's

obligations under the Policy.

72.    An actionable and justiciable controversy exists between NELCO Worldwide and

Federal concerning the proper construction of the Policy, and the rights and obligations of the

parties thereto, with respect to the Claims for the fraudulent wire transfers in or around

September, 2018.

73.    NELCO Worldwide is entitled to a declaration declaring that there is coverage

available for the fraudulent wire transfers in or about September, 2018 under the Policy, and any

other relief this Court deems proper.

## COUNT III
### (Unfair and Deceptive Acts or Practices in Violation of G.L. c. 93A and G.L. c. 176D)

74.    NELCO Worldwide repeats and incorporates by reference paragraphs 1 through

73 as if fully set forth herein.

75.    NELCO Worldwide and Federal are engaged in trade or commerce in the

Commonwealth of Massachusetts and their contract and Federal's conduct thereunder took place

within the Commonwealth of Massachusetts.

73.    Federal is engaged in the business of insurance within the meaning of G.L. c.

176D, §1(a).

74.   Federal engaged in unfair and deceptive acts and practices by, <u>inter alia</u>, the following acts and/or omissions:

    a.   Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

    b.   Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

    c.   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    d.   Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

    e.   Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

    f.   Delaying the investigation or payment of claims by requiring that an insured or claimant... submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

75.   The actions and inactions of Federal as described above and as described in NELCO Worldwide's Chapter 93A Demand Letter, dated August 1, 2019, including, but not limited to, its conduct in claims investigation and handling, constitute unfair and deceptive claims practices in the business of insurance which are prohibited by G.L. c. 176D, §3(9).

76.   The actions and inactions of Federal as described above and as described in NELCO Worldwide's Chapter 93A Demand Letter constitute unfair and deceptive acts or practices as prohibited by both G.L. c. 93A and G.L. c. 176D.

77.   As a result of Federal's unfair and deceptive claims handling and settlement practices in violation of G.L. c. 93A and G.L. c. 176D, NELCO Worldwide has been damaged.

78.   Federal's unfair and deceptive acts or business practices were willful and intentional.

79.     Accordingly, NELCO Worldwide has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff New England Lead Burning Company, Inc. d/b/a NELCO Worldwide respectfully requests judgment against Defendant Federal Insurance Company as follows:

a.      Enter judgment in favor of NELCO Worldwide and against Federal for breach of contract on Count I and award NELCO Worldwide damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

b.      Enter a declaratory judgment in favor of NELCO Worldwide against Federal on Count II, declaring that Federal is obligated to pay NELCO Worldwide, up to the applicable limits of the Policy, for the Claims and further declare as follows:

1.      Declare that there are two (2) claims for which NELCO Worldwide is entitled to coverage under the Policy;

2.      Declare that in September of 2018, NELCO Worldwide experienced an electronic attack;

3.      Declare that as part of this electronic attack, the perpetrators obtained Graham's login credentials, without her consent;

4.      Declare that the perpetrators entered into NELCO Worldwide's computer system using Graham's credentials;

5.      Declare that the perpetrator changed data elements and/or program logic in NELCO Worldwide's computer system by adding mail rules to Graham's electronic mailbox;

6.  Declare that one of the mail rules added to Graham's electronic mailbox redirected copies of all emails to and from Graham to one of the perpetrators at wlewis.rwlinvestments1@gmail.com, which was an email address outside of NELCO Worldwide;

7.  Declare that the other mail rule that was added to Graham's electronic mailbox directed that all references to the copies sent to wlewis.rwlinvestments1@gmail.com be deleted from Graham's sent items;

8.  Declare that the perpetrator, without authorization, entered into NELCO Worldwide's computer system and/or changed a data element in NELCO Worldwide's computer system by using a fraudulent email address to appear as though it was from another NELCO Worldwide supervisory employee authorizing and directing electronic payment of a purported supplier via the perpetrator's bank account;

9.  Declare that the perpetrator, without authorization, entered into NELCO Worldwide's computer system and/or changed a data element in NELCO Worldwide's computer system by using a fraudulent email address to appear as though it was from a supplier authorizing and directing electronic payment to the perpetrator's bank account;

10. Declare that NELCO is entitled to coverage under the Computer Fraud, Funds Transfer Fraud and/or Forgery provisions of the Policy for each of the claims; and

11. Declare that NELCO is entitled to coverage for its investigative expenses;

c.      Enter judgment in favor of NELCO Worldwide and against Federal for violations of G.L. c. 93A and G.L. c. 176D on Count III;

d.      Find that Federal's unfair and deceptive acts were willful and intentional and award at least twice but no more than three times NELCO Worldwide's actual damages;

e.      Award money damages, plus pre-judgment and post-judgment interest on all counts of the Complaint;

f.      Award NELCO Worldwide the costs of this action, including, without limitation, attorneys' fees and costs; and

g.      Award NELCO Worldwide such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

NEW ENGLAND LEAD BURNING
COMPANY, INC. d/b/a NELCO
WORLDWIDE

By its attorneys,

Thomas J. Conte, Esq.
BBO #566092
James P. Hoban, Esq.
BBO #633929
Alexandra N. Mansfield, Esq.
BBO #697163
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502
tconte@mirickoconnell.com
jhoban@mirickoconnell.com
amansfield@mirickoconnell.com

Dated:  January 3, 2020

| CIVIL ACTION COVER SHEET | DOCKET NO(s) **B.L.S.** | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

PLAINTIFF(S)
New England Lead Burning Company, Inc. d/b/a NELCO Worldwide
2 Burlington Woods Drive, Suite 300
Burlington, MA 01803

DEFENDANT(S)
Federal Insurance Company
202B Hall's Mill Road
Whitehouse Station, NJ 08833

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number
Thomas J. Conte, Esq., BBO #566092
James P. Hoban, Esq., BBO #633929
Alexandra N. Mansfield, Esq., BBO #667163
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608-1477; (508) 791-8500

ATTORNEY (If known)

Origin Code Original Complaint

TYPE    ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * Yes

BK.1      (B) ( X ) Yes ( ) No

BK.1      Claims related to or arising out of an insurance policy, TRACK (B),   Yes, a Jury is claimed

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This action is brought by New England Lead Burning Company, Inc. d/b/a NELCO Worldwide ("NELCO Worldwide") against Federal Insurance Company ("Federal") for breach of contract, declaratory relief, and violations of Massachusetts General Laws Chapters 93A and 176D, arising out of Federal's unjustified refusal to provide coverage under an insurance policy it sold to NELCO Worldwide.

NELCO Worldwide is the named insured under Federal Forefront Portfolio 3.0 Policy Number 8225-5904 (the "Policy"), which specifically provides coverage for losses resulting from "Computer Fraud," "Funds Transfer Fraud," and "Forgery."

NELCO Worldwide was the victim of two (2) separate international wire transfer frauds on or about September 12, 2018 and September 27, 2018, respectively, in which a NELCO Worldwide employee was deceived by emails from perpetrators of the fraud forged to appear as if they were coming from another NELCO Worldwide employee, and a supplier resulting in the transfer of a total of $933,916.55 to two (2) overseas accounts.

To effectuate this scheme, the perpetrators obtained the employee's login credentials and, thereafter, entered the NELCO Worldwide computer system to monitor NELCO Worldwide's email and financial transactions. In this regard, the perpetrators added two (2) new mail rules, one to direct a blind copy of all emails to and from the employee to an address outside NELCO Worldwide and the other to cover their electronic tracks by deleting all such emails from the employee's sent items, so that neither she nor an administrator would detect the unauthorized entry and/or the forwarding of all emails sent and received by her. This allowed the attackers to covertly monitor all communications and facilitated their ability to fraudulently communicate with NELCO Worldwide's personnel.

NELCO Worldwide purchased the Policy, and the Policy is designed, to protect NELCO Worldwide against precisely the type of loss it has now incurred as a result of the two (2) fraudulent wire transfers. Yet despite the fact that NELCO Worldwide paid its premiums, gave prompt notice of the fraud to Federal, and cooperated fully and completely with Federal's inquiry into the fraud, Federal has failed and refused to pay NELCO Worldwide's claims for coverage under the Policy (the "Claims"), except belatedly for Social Engineering coverage in the amount of $100,000. This refusal to pay constitutes a breach of Federal's contractual obligations.

NELCO Worldwide seeks a declaration that there is coverage for the Claims under the Policy, particularly, under the Computer Fraud Coverage provision, the Funds Transfer Fraud Coverage provision, and Forgery Coverage provision and other clauses, and damages for breach of contract due to Federal's unreasonable failure to honor its obligation under the Policy to cover the Claims.

NELCO Worldwide also seeks damages from Federal under G.L. c. 93A, for, inter alia, intentionally and wrongfully delaying the payment of amounts which were indisputably due as early as October or November 2018 under one coverage (Social Engineering) while purportedly "investigating" coverage under the other provisions for approximately an additional seven (7) months, without any justification or excuse for that delay, and the misstating and disregarding of material facts in an effort to justify its wrongful denial of coverage. As a result, NELCO Worldwide seeks an award of multiple damages, as well as its attorneys' fees and costs.

\* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____
DATE: 1/31/2020

*NotiFy*  *4* *v 119*



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
SUFFOLK DIVISION
CIVIL ACTION NO. *20-0037-BLS2*

*Notified 01.14.2020 (NJ)*
*- MODs/ T.J.C., J.P.H., A.N.M.*

NEW ENGLAND LEAD BURNING
COMPANY, INC. d/b/a NELCO
WORLDWIDE,
    Plaintiff

v.

FEDERAL INSURANCE COMPANY,
    Defendant

**MOTION FOR SPECIAL
PROCESS SERVER**

*1/8/20 allowed, Salinger, J.*
*attest: RM VMquash/l*

The Plaintiff New England Lead Burning Company, Inc. d/b/a NELCO Worldwide

moves that the Court, pursuant to Mass. R. Civ. P. 4C, appoint a special process server,

Francis J. Trapasso & Associates, by its constables, agents or disinterested persons who are

qualified, over the age of eighteen, knowledgeable in the service of process and who are not

parties in this action, because of special knowledge, long experience and the need for immediate

service upon the Defendant Federal Insurance Company.

*2020 JAN -6 A 10:10*

NEW ENGLAND LEAD BURNING
COMPANY, INC. d/b/a NELCO
WORLDWIDE

By its attorneys,


Thomas J. Conte, Esq.
BBO #566092
James P. Hoban, Esq.
BBO #633929
Alexandra N. Mansfield, Esq.
BBO #697163
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502
tconte@mirickoconnell.com
jhoban@mirickoconnell.com
amansfield@mirickoconnell.com

Dated: January 3, 2020

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court**

*Notify*  *V 119*

CIVIL DOCKET#: SUCV2020-00037-BLS2

*(NS)*
*NOTIFIE 01-14-2020*
*-MODB4/T-J.C.;*
*J.P.H, A.N.M.*

Case:  New England Lead Burning Company, Inc. v. Federal Ins. Co.

## NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to BLS2.

Hereafter, as shown above, all parties must include the initials "BLS2" at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the appropriate BLS Session Clerk at Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel.  Before the Rule 16 Conference, counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Project on Discovery (counsel are directed to http://www.mass.gov/courts/court-info/trial-court/sc/sc-bls-gen.html for description of the Project).  Counsel may indicate their respective client's participation by completing, filing and serving the attached form. If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated: _____1/3/20_____

_____
Janet L. Sanders
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

Notified 01.14.2020 (NS)
-HODSL/T.J.C, J.P.H, A.N.M.

Notify

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: _____

Case: _____

As you may know, the Business Litigation Session began implementing a Discovery Project in January, 2010. This project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the project with the Court at the initial case management conference. For a detailed copy of the BLS Discovery Project, counsel are directed to the Trial Court home page at: http://www.mass.gov/courts/court-info/trial-court/sc/sc-bls-gen.html)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

☐   Yes, _____ is willing to participate in the Discovery Project.
          (Party's Name)

Case Name _____

Docket Number CIVIL DOCKET#: _____

Counsel For_____          Date_____

Firm Name and Address:

_____

_____

_____

Please complete this form and return it to:

Helen Foley, Asst. Clerk      **OR**      Richard V. Muscato, Jr., Asst. Clerk
BLS1, Room 1309                            BLS2, Room 1017
3 Pemberton Square                        3 Pemberton Square
Boston, MA 02108                          Boston, MA 02108